IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RANDALL WILSON, *on behalf of himself and others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br><br>GOWAITER FRANCHISE HOLDINGS LLC, and MICHAEL HANDY<br><br><br><br>Defendants. | CIVIL ACTION FILE NO.<br><br>_____<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Named Plaintiff Randall Wilson ("Named Plaintiff"), by and through his undersigned counsel, brings this action on behalf of himself and others similarly situated against Defendants GoWaiter Franchise Holdings LLC ("GoWaiter") and Michael Handy ("Handy"), and states and alleges as follows:

### NATURE OF THE ACTION

1. This is an action under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, ("FLSA") alleging that Defendants failed to pay Named Plaintiff and

1

others similarly situated the correct amount of minimum wages during their employment.

## JURISDICTION AND VENUE

2.   This Court exercises jurisdiction over the claims of Named Plaintiff and others similarly situated pursuant to 28 U.S.C. § 1331.

3.   Venue is proper pursuant to 28 U.S.C. § 1391(b) and LR 3.1(B), NDGa., because a substantial part of the events or omissions giving rise to Named Plaintiff's claims, as described in this complaint, occurred within the Atlanta Division of the Northern District of Georgia.

## PARTIES

4.   Named Plaintiff is a citizen of the State of Georgia who resides in Gwinnett County.

5.   According to Defendant GoWaiter's registration with the Georgia Secretary of State, Defendant GoWaiter is a Florida limited liability company with its principal office located at 1830 E Park Avenue, Tallahassee, Florida 32301.

6.   Defendant Handy may be served with process personally at his home address, at the offices of Defendant GoWaiter, or wherever he may be found. Alternatively, Defendant Handy may be served with process by leaving a copy of the complaint and a summons with someone of "suitable age and discretion" residing at his home address.  Fed.R.Civ.P. 4(h).

7. Defendant GoWaiter is an enterprise "that has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person engaged in interstate commerce and/or the production of goods for commerce." 29 U.S.C. § 203(s)(1)(A)(i).

8. At times relevant to this action, Defendant GoWaiter had at least $500,000.00 in "annual gross volume of sales made or business done." 29 U.S.C. § 203(s)(1)(A)(ii).

9. Defendant GoWaiter employed Named Plaintiff and others similarly situated who were engaged in commerce and/or the production of goods for commerce.

10. Defendant Handy employed Named Plaintiff and others similarly situated who were engaged in commerce and/or the production of goods for commerce.

11. At all times relevant to this action, Defendant GoWaiter was an "employer" within the meaning of 29 U.S.C. § 203(d).

12. At all times relevant to this action, Defendant Handy was an "employer" within the meaning of 29 U.S.C. § 203(d).

13. At all times relevant to this action, Named Plaintiff and others similarly situated were "employees" within the meaning of 29 U.S.C. § 203(e).

14. Named Plaintiff and others similarly situated are individuals who have received payment from Defendants for serving as delivery drivers and/or delivery waiters ("Drivers").

15. As the case proceeds, other Drivers will likely sign consent forms and seek to join this action.

## DEFENDANT GOWAITER IS AN EMPLOYER UNDER THE FLSA

16. Defendant GoWaiter and its franchisees operate under and exhibit a common business practice.

17. Defendant GoWaiter retains control over the basic aspects of its franchisees' businesses.

18. Defendant GoWaiter exercises functional control over its franchisees.

19. For example, GoWaiter prescribes the range of delivery fees that franchisees may charge customers.

20. Additionally, Defendant GoWaiter sets compensation polices for Drivers.

21. For example, Defendant GoWaiter requires its franchises to remit to Drivers part of the delivery fees the franchisees charge to customers.

22. By way of further example, Defendant GoWaiter requires its franchisees to allow Drivers to keep all of their tips.

23. Moreover, Named Plaintiff's 2012 "Driver Cashout Report" lists "GoWaiter.com" as its principal heading.

24. Defendant GoWaiter owns and operates the website http://www.GoWaiter.com.

25. Defendant GoWaiter prescribes management and operation policies for its franchisees.

26. Defendant GoWaiter further implements its management and operation policies by conducting training for new franchisees.

27. For example, Defendant GoWaiter provides Operational Training regarding qualifying, managing, shadowing, and check-out procedures for Drivers.

28. Defendant GoWaiter has the right to inspect franchisees' locations to ensure compliance with Defendant GoWaiter's policies.

29. During those inspections, Defendant GoWaiter has the right to interview Drivers.

30. Defendant GoWaiter requires its franchisees to conduct criminal background checks and sex offender checks of Drivers.

31. Defendant GoWaiter requires its franchisees to provide it with the results of criminal background checks and sex offender checks of Drivers.

32. Defendant GoWaiter prescribes strict rules for the GoWaiter Menu Guides promulgated by its franchisees.

33. For example, all GoWaiter Menu Guides must have the same logo and similar style and appearance.

34. By way of further example, Defendant GoWaiter requires its franchisees to list the current menu price of all partner restaurants' items included in the GoWaiter Menu Guide.

35. By way of further example, Defendant GoWaiter requires the GoWaiter Menu Guides to have at least eight (8) restaurant menus.

36. By way of further example, Defendant GoWaiter requires its franchisees to devote at least one-half page of the GoWaiter Menu Guides toward Driver recruitment and franchise opportunities.

37. Defendant GoWaiter requires its franchisees to perform services for all restaurant chains with which Defendant GoWaiter has a "Restaurant Chain Account."

38. Defendant GoWaiter engages in unified marketing and advertising for all of its franchisees.

**DEFENDANT HANDY IS AN EMPLOYER UNDER THE FLSA**

39. Defendant Handy is the President and Chief Executive Officer of Defendant GoWaiter.

40. Defendant Handy acted directly and indirectly in the interest of other Defendants in relation to Drivers.

41. At all times relevant, Defendant Handy exercised day-to-day control over the affairs of Defendant GoWaiter.

42. Defendant Handy had, and on information and belief continues to have, authority to hire and terminate employees of other Defendants.

43. In fact, Defendant Handy made the ultimate decision to fire Named Plaintiff.

44. On information and belief, Defendant Handy sets the range of delivery fees that franchisees may charge to customers.

45. Defendant Handy supervises and teaches Initial Training for new franchisees.

46. Defendant Handy supervises Operational Training for new franchisees.

### FACTUAL ALLEGATIONS IN SUPPORT OF NAMED PLAINTIFF'S CLAIMS ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED

47. Defendant GoWaiter is a restaurant delivery service that delivers food from restaurants to customers.

48. Named Plaintiff worked at Defendant GoWaiter's Gwinnett County and Alpharetta franchise locations from August 2012 until January 2013.

49. At times relevant to this action, Defendant GoWaiter owned the Gwinnett County and Alpharetta franchise locations.

50. At times relevant to this action, Defendant GoWaiter owned other franchise locations.

51. Customers can visit Defendant GoWaiter's website, http://www.GoWaiter.com, to place an order with a partner restaurant.

52. Alternatively, customers can place an order over the phone.

53. Customers are automatically charged a delivery fee by Defendant GoWaiter in addition to the cost of their order.

54. Defendant GoWaiter's dispatchers send text messages to Drivers that include the restaurant, order, customer address, and whether the customer will pay with cash or by credit card.

55. Drivers are paid a set amount of the delivery fee for each "run" they make.

56. Generally, the pay per run is less than the federal minimum wage of $7.25 per hour.

57. Drivers are often able to make only one run per hour.

58. While Drivers may receive tips, Drivers are not told that Defendant GoWaiter will claim their tips as wages.

59. During every shift, Drivers must rent a drink tray, warming bag, and car topper from Defendant GoWaiter for $1.

60. If a Driver does not pay the equipment rental fee, he or she will be sent home from work.

61. At times relevant to this action, Defendant GoWaiter required Drivers to adhere to a dress code consisting of a black shirt and khaki pants.

62. At times relevant to this action, Defendant GoWaiter required Drivers to adhere to a uniform consisting of a black GoWaiter polo shirt and khaki pants.

63. At times relevant to this action, Defendant GoWaiter required Drivers to purchase a GoWaiter polo shirt and apron.

64. Defendant GoWaiter prohibits Drivers from allowing non-Drivers to accompany them as passengers or helpers while on runs.

65. Drivers are subject to disciplinary action by Defendant GoWaiter's dispatchers and managers, ranging from warnings to termination of Delivery Waiter Agreements.

66. Drivers did not advertise their services but instead relied upon Defendant GoWaiter's advertising for runs.

67. Defendant GoWaiter's dispatchers and managers decide which routes will be given to what drivers.

68. Other than theft or issues related to their cars, Drivers have no opportunity for losses while working for Defendant GoWaiter.

69. Drivers do need any specialized training in order to perform their jobs.

70. Defendant GoWaiter depended on Drivers for its success, as its business model relies upon deliveries to customers that would be impossible without Drivers.

### COUNT ONE: WILLFUL FAILURE TO DRIVERS THE MINIMUM WAGE REQUIRED BY THE FLSA

71. At times relevant to this action, Defendants were required to pay Drivers, including Named Plaintiff, the minimum wage pursuant to 29 U.S.C. § 206.

72. However, Named Plaintiff was not properly compensated for all hours worked.

73. Instead, Named Plaintiff was paid at a rate per run that resulted in him earning less than the minimum wage.

74. Defendants subjected other Drivers to the same policies and practices.

75. Defendants' decisions with respect to Drivers' compensation show a reckless disregard for Drivers' rights under the FLSA.

76. Moreover, Defendants lacked reasonable grounds for believing its pay practices with respect to Drivers comported with the requirements of the FLSA.

77. Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255.

78. Pursuant to 29 U.S.C. § 216(b), Defendants are liable to Drivers for three years of unpaid minimum wages, an equal amount as liquidated damages, and reasonable attorney's fees and costs of litigation.

## DEMAND FOR JUDGMENT

Plaintiff respectfully requests that:

I. The Court certify this action as a collective action under the FLSA;

II. The Court enter judgment in favor of Named Plaintiff and others similarly situated who opt into this action;

III. The Court enter judgment against Defendants that their violations of the FLSA were willful;

IV. The Court award all unpaid minimum wages to Named Plaintiff and others similarly situated who opt into this action as provided for by the FLSA;

V. The Court award liquidated damages equal to the amount of all unpaid wages to Named Plaintiff and others similarly situated who opt into this action as provided for by the FLSA;

VI. The Court award reasonable costs and attorney's fees to Named Plaintiff and others similarly situated who opt into this action as provided for by the FLSA; and

VII. Named Plaintiff and others similarly situated who opt into this action receive such other relief as the Court deems just and proper.

Respectfully submitted:   April 1, 2013.

MAYS & KERR LLC
229 Peachtree Street
International Tower | Suite 980
Atlanta, Georgia 30303
Telephone:  (404) 410-7998
Facsimile:   (404) 855-4066
Attorney for Plaintiff

s/Jeff Kerr
Jeff Kerr
Georgia Bar No. 634260
jeff@maysandkerr.com