IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RANDALL WILSON and CHRIS MESSER,
*on behalf of themselves and
others similarly situated*,

   Plaintiffs,

          CIVIL CASE NO.

v.         1:13-cv-01054-JEC

GOWAITER FRANCHISE HOLDINGS, LLC
and MICHAEL HANDY,

   Defendants.

**<u>ORDER & OPINION</u>**

This case is before the Court on plaintiffs' Motion for Conditional Certification of Collective Action and Issuance of Court-Approved Notice to the Collective Class Action Members [14] ("Motion for Certification") and Motion for Leave to Amend Their First Amended Complaint [17] ("Motion to Amend"). Also before the Court are defendants' Motion to Dismiss Plaintiffs' Amended Complaint [15] ("Motion to Dismiss"), Motion to Stay Proceedings Pending Resolution of Motion to Dismiss Amended Complaint [16] ("Motion to Stay"), and Notice of Objection to Plaintiffs' Unilateral Submission of Rule 26(f) Report and Request For Sanctions [26] ("Request for Sanctions").

The Court has reviewed the record and the arguments of the

parties and, for the reasons that follow, concludes that plaintiffs' Motion to Amend [17] should be **GRANTED**, defendants' Motion to Dismiss [15] should be **DENIED**, defendants' Motion to Stay [16] should be **DENIED AS MOOT**, plaintiffs' Motion for Certification [14] should be **GRANTED IN PART**, and defendants' Request for Sanctions [26] should be **DENIED**.

<u>BACKGROUND</u>

This case arises from alleged violations of the Fair Labor Standards Act of 1938 ("FLSA"). 29 U.S.C. §§ 201 *et seq.* Non-party GoWaiter Business Holdings, LLC ("GoWaiter Business") is a Florida limited liability company that sells "a restaurant business marketing model to franchisees." (Br. in Support of Mot. to Dismiss [15] at 2.) The GoWaiter model facilitates the delivery of food from a variety of local restaurants to customers through a common website. (*See* Resp. [22] at 2-3.) When a GoWaiter franchise receives an order, it relays the information to one of its drivers via text message. (Am. Compl. [13] at ¶ 33.) The driver then collects the food from the chosen restaurant and delivers it to the customer, who pays a small delivery fee for the service. (*Id.* at ¶ 31; Resp. [22] at 2-3.)

Whereas GoWaiter Business "operates corporate offices, sells franchises, trains franchises, and collects royalties for ongoing

business", defendant GoWaiter Franchise Holdings, LLC ("GFH") is a distinct entity "whose purpose is limited to taking over the management and operations of franchises in a territory until that territory can be sold or transferred to a new owner." (Br. in Support of Mot. to Dismiss [15] at 2.) When a GoWaiter franchisee desires to sell its business, GFH purchases the franchise and "assume[s] operations of [the] . . . territory" until a new franchisee can take over. (Resp. [22] at 5-6.) It was in this capacity that GFH owned and operated one GoWaiter franchise in Gwinnett County, Georgia from October 1, 2012 through March 11, 2013 and one GoWaiter franchise in Alpharetta, Georgia from January 1, 2013 through March 22, 2013.[1] (Mot. to Dismiss [15] at Ex. A, at ¶ 3.) Plaintiff Randall Wilson worked as a driver for GFH at both of its Georgia locations from August 2012 until January 2013. (Am. Compl. [13] at ¶¶ 24-25.) Plaintiff Chris Messer worked as a driver at GFH's Alpharetta location from April 2012 through February 2013. (*Id.* at ¶¶ 26-27.)

GoWaiter drivers are paid a set fee for each delivery they complete. (*Id.* at ¶¶ 34, 60.) Drivers are permitted to keep any tips that they receive, although, allegedly, they are not informed

---

[1] During this time period, GFH operated only one other GoWaiter franchise, which was located in Tallahassee, Florida. (Mot. to Dismiss [15] at Ex. A, ¶ 4.) As of July 15, 2013, GFH does not operate any GoWaiter franchises. (*Id.* at ¶¶ 4, 9.)

3

that tips are claimed as wages.  (*Id.* at ¶ 57.)  Because the per-delivery fee paid to drivers is less than the federally-mandated minimum wage and because a driver is typically able to make only one delivery per hour, plaintiffs claim that the GoWaiter driver compensation structure violates the FLSA.  (*Id.* at ¶¶ 53-61.)

        To that end, on April 1, 2013, Randall Wilson filed suit against GFH and Handy on behalf of himself and all similarly situated individuals to recover unpaid minimum wages, liquidated damages, and costs and fees.  (Compl. [1].)  Wilson filed an amended complaint on June 28, 2013, adding Chris Messer as a named plaintiff.  (Am. Compl. [13].)  Then, on July 3, 2013, plaintiffs filed their Motion for Certification [14].  Soon after, on July 15, 2013, defendants filed a Motion to Dismiss [15] for lack of subject matter jurisdiction on the basis that GFH does not generate sufficient income to be governed by the FLSA.  (Br. in Support of Mot. to Dismiss [15] at 2, 4-5, 7-9.)  In response, plaintiffs filed their Motion to Amend [17] on August 1, 2013 in order to assert a joint enterprise theory of coverage which, if successful, would remedy the previous complaint's deficiency and pull GFH within the FLSA's ambit.  (*See* Reply [24] at 2-3.)  Then, on September 4, 2013, plaintiffs submitted a Notice [25] to inform the Court why the parties had not yet submitted a Joint Preliminary Report and Discovery Plan ("preliminary report"), to which defendants responded with a Request for Sanctions [26].

AO 72A
(Rev.8/82)

<u>DISCUSSION</u>

I.   <u>PLAINTIFFS' MOTION TO AMEND</u>

    A.   <u>Standard For Granting Motion To Amend</u>

The FLSA governs enterprises that annually generate more than $500,000 in revenue.  29 U.S.C. § 203(s)(1)(A)(ii).  The parties agree that GFH, alone, does not produce sufficient revenue to fall under the FLSA's governance.  (*See* Br. in Support of Mot. to Dismiss [15] at 4-5; Reply [20] at Ex. A.)  Accordingly, plaintiffs filed their Motion to Amend [17] in order to "remove the allegation that Defendant GFH had revenues in excess of $500,000.00 per year and to add allegations showing enterprise coverage by alleging that Defendant GFH was part of a 'common enterprise' with other entities owned and/or operated by Defendant Handy."  (Mot. to Amend [17] at 3.)

The Federal Rules of Civil Procedure provide that the Court is to "freely give leave [to amend a pleading] when justice so requires."  FED. R. CIV. P. 15(a)(2).  "[U]nless a substantial reason exists to deny leave to amend, the discretion of the District Court is not broad enough to permit denial."  *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1041 (11th Cir. 2006)(quoting *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989)).  The Eleventh Circuit instructs that substantial reasons for denying leave to amend a pleading include "undue delay, undue

5

prejudice to the defendants, and futility of the amendment." *Id.* (quoting *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)).

**B.   <u>Plaintiff's Proposed Amendment Is Not Futile</u>**

Defendants oppose plaintiffs' proposed amendment on the ground that it is futile. (*See, e.g.*, Resp. [22] at 2.)  They claim that franchise relationships cannot constitute joint enterprises under the FLSA, and that even if they could, plaintiffs cannot establish that one exists between GFH and GoWaiter Business. (*Id.* at 10-21.)  For the following reasons, the Court disagrees.

**1.   The FLSA Does Not Categorically Exclude Franchise Relationships From Joint Enterprise Coverage**

While it is true that franchise operations do not generally meet the requirements for inclusion, the FLSA does not categorically exclude franchise relationships from joint enterprise coverage.[2] Indeed, Department of Labor regulations "make it clear that an *ordinary* franchise arrangement does not create an enterprise", but that "*some* franchise . . . arrangements have the effect of creating a larger enterprise and whether they do or do not depends on the

---

[2] Under the FLSA, joint enterprise coverage and joint enterprise liability are distinct concepts. *Cornell v. CF Ctr., LLC*, 410 Fed. App'x 265, 267 (11th Cir. 2011).

AO 72A
(Rev.8/82)

facts." *Marshall v. Shan-An-Dan, Inc.*, 747 F.2d 1084, 1087 n.4 (6th Cir. 1984)(emphasis supplied); 29 C.F.R. § 779.230(a). For example, where a franchise "vest[s] control over the operations of the dealer's business in the one granting the franchise, the result is to place the dealer in a larger enterprise with the one granting the franchise." 29 C.F.R. § 779.232(a); *see also* 29 C.F.R. § 779.218 (permitting franchises to establish unified operation).

Defendants rely upon three cases for their argument that a franchise relationship cannot support joint enterprise coverage under the FLSA: *Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512 (1973); *Marshall*, 747 F.2d at 1087; and *Abdelkhaleq v. Precision Door of Akron*, No. 5:07CV03585, 2008 WL 3980339 (N.D. Ohio Aug. 21, 2008)(O'Malley, J.). All three are distinguishable.

First, the exemption noted in *Brennan* requires "independent ownership" as a prerequisite, which plaintiffs allege GFH and GoWaiter Business lack. 410 U.S. at 517-18; 29 U.S.C. § 203(r)(1); 29 C.F.R. §§ 779.226–.227; (Mot. to Amend [17] at 9-11, Ex. 4, ¶¶ 25, 29-33). Second, the *Marshall* decision rested upon the Sixth Circuit's inability to "perceive . . . the existence of common control" where the entities lacked the "'practical and realistic' factors" of common "stockholders, directors, officers, and [] managers, auditors, or common facilities for storage or recordkeeping". 747 F.2d at 1086-87. *Marshall* did not exclude *all*

7

franchise relationships from joint enterprise coverage, and allegations of common control are not wanting here. (Mot. to Amend [17] at 10-11, Ex. 4, ¶¶ 11-12, 15-17, 20, 24-25, 30-34.)

Finally, the plaintiff in *Abdelkhaleq* failed to allege that the franchise arrangement at issue constituted a joint enterprise. 2008 WL 3980339, at *1, 4. To the extent that she sought leave to amend her complaint, the court held that she would be factually unable to plead joint control or shared management, as joint enterprise coverage requires. *Id.*, at *5. Plaintiffs here have alleged that these mechanisms of control exist. In short, besides the fact that neither *Marshall* nor *Abdelkhaleq* are binding upon the Court, their factual differences from the present case erase any persuasive weight that they may have otherwise carried.

### 2.   Plaintiffs' Joint Enterprise Theory

To proceed on their theory that GFH and GoWaiter Business form a joint enterprise, plaintiffs must show the existence of three elements: (1) related activities; (2) unified operation or common control; and (3) a common business purpose. *Donovan v. Easton Land & Dev. Inc.*, 723 F.2d 1549, 1551 (11th Cir. 1984). "All three elements must be present for an 'enterprise' to exist." *Id.* (citing *Dunlop v. Ashy*, 555 F.2d 1228, 1231 (5th Cir. 1977)).

8

### a.   Related Activities

The Eleventh Circuit holds that "[a]ctivities are related when they are 'the same or similar' or when they are 'auxiliary and service activities.'" *Id.* at 1551 (citation omitted).  Auxiliary and service activities are characterized as those "involving 'operational interdependence in fact.'" *Id.*   This broad category includes activities such as warehousing, bookkeeping, and "all other activities which are performed for the common business purpose of the enterprise."   29 C.F.R. § 779.206(a).   Accordingly, whether activities are related "will depend in each case upon whether [they] serve a business purpose common to all the activities of the enterprise, or whether they serve a separate and unrelated business purpose." *Id.* at § 779.206(b).

Plaintiffs' theory is that GFH operates GoWaiter franchises to maintain continuity of service during a lapse in ownership, preserving the goodwill built up in a service area and facilitating sale of the franchise to a new franchisee.  GFH, plaintiffs claim, therefore shares with GoWaiter Business the ultimate business purpose of selling GoWaiter franchises.  With respect to the activities performed to further that business purpose, plaintiffs allege that GFH "provides an auxiliary activity for [GoWaiter Business] by 'taking over the management and operations of Go Waiter franchises in a territory until that territory can be sold or transferred to a new

owner.'" (Mot. to Amend [17] at Ex. 4, ¶ 22.)  They further claim that GFH and GoWaiter Business share the same principal place of business and central office facilities, and operate with many of the same personnel.  (*Id.* at ¶¶ 24, 25, 34.)  In addition, plaintiffs note that GoWaiter Business serves as the registered agent for GFH and that "the operation of GFH's franchises enhances the public image of [GoWaiter Business] by providing services to customers [and by] preventing gaps in services." (*Id.* at ¶¶ 20, 26-27.)  Such allegations are sufficient to support the claim that GFH and GoWaiter Business perform related activities.  *Cf. Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1367 (5th Cir. 1973)(finding that businesses perform related activities, in part, because each enhances the public image of the others) and *Reich v. Priba Corp.*, 890 F. Supp. 586, 589-90 (N.D. Tex. 1995)(finding that entities perform related activities when neither would exist without the other and each is used to enhance the other's public image).

### b.   Unified Operation or Common Control

When evaluating whether two organizations constitute a unified operation or are controlled by a common authority, the "determinative question is whether a common entity has the power to control the related business operations." *Donovan*, 723 F.2d at 1552 (citing *Shultz v. Mack Farland & Sons Roofing Co.*, 413 F.2d 1296, 1301 (5th Cir. 1969)).  "A controlling ownership interest in a business, though

not a prerequisite for 'common control,' establishes that the power of control exists.   The right to control that is inherent in ownership is determinative of the 'common control' test regardless of the extent to which the right to control is exercised." *Id.* (citations omitted); *see also* 29 C.F.R. § 779.221.

In support of their claim that GFH and GoWaiter Business are under common control, plaintiffs note that the entities share the same founder, owner, president, and two of three managing members. (Mot. to Amend [17] at Ex. 4, ¶¶ 30-32.)   They further claim that defendant Handy controls both GFH and GoWaiter Business.   (*Id.* at ¶ 33.)   Finally, Handy and non-party Tony Ceppaluni retained ultimate control over GFH, including the power to decide whether it would buy and sell franchises and the obligation to ensure it satisfied its contractual duties.   (Resp. [22] at Ex. A, ¶ 6.)

Defendants make much of the ability of lower-level managers to direct the day-to-day operations at GFH's GoWaiter franchises.   This is not dispositive, however, for where sufficient ownership exists to exercise control over an entity, "it is immaterial that some segments of the related activities may operate on a semiautonomous basis, superficially free of actual control, so long as the power to exercise control exists through such ownership." (Resp. [22] at 18-19); 29 C.F.R. § 779.222; *see, e.g.*, *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 526-28 (S.D.N.Y. 1998).

AO 72A
(Rev.8/82)

Defendants also emphasize that GFH and GoWaiter Business maintain separate "bank accounts, insurance, payroll systems, contractual obligations, franchise disclosure documents, and tax liability." (Resp. [22] at 18.) But when considering joint enterprise coverage, the Court must "look beyond formalistic corporate separation to the actual pragmatic operation and control". *Cornell*, 410 Fed. App'x at 267 (quoting *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 970 (5th Cir. 1984)). Defendants' citation to superficial indications of separate corporate identities cannot overcome plaintiffs' sufficient allegations of common control. *See Gonzalez v. Old Lisbon Rest. & Bar L.L.C.*, 820 F. Supp. 2d 1365, 1369 (S.D. Fla. 2011)(allegations that two companies share the same managing member are "sufficient to satisfy the second prong of the joint enterprise test.").

### c.   A Common Business Purpose

The common business purpose element is the toughest of the three to pin down, partly because the FLSA fails to define the phrase and partly because "[m]any of the considerations relevant in determining the existence of related activities are pertinent to determine the existence of a 'common business purpose.'" *Donovan*, 723 F.2d at 1553. Department of Labor regulations indicate that a common business purpose is not "a narrow concept and is not intended to be limited to a single business establishment or a single type of

12

business." 29 C.F.R. § 779.212.  The regulations go on to state that "the term 'common business purpose' will encompass activities . . . which are directed to the same business objective or to similar objectives in which the group has an interest." *Id.* at § 779.213.  As with the other elements, whether a common business purpose exists depends upon the particular circumstances of the relationship at issue.  *Id.*

Here, plaintiffs claim that "GFH would not have a purpose without [GoWaiter Business's] existence." (Mot. to Amend [17] at Ex. 4, ¶ 28.)  Plaintiffs allege that GFH and GoWaiter Business share three business goals: "expanding and supporting the GoWaiter franchise model"; "ensuring continuous provision of delivery services by GoWaiter in the relevant community when a franchisee either chooses to or must cease providing those services"; and "implement[ing] efficient [restaurant delivery service] operations and profitable business practices from Coast to Coast, while building a national brand". (*Id.* at ¶¶ 36-38.)  And as noted *supra*, even though the entities use different means to achieve it, plaintiffs claim that the end-game for GFH is the same as it is for GoWaiter Business: the sale of GoWaiter franchises.

Citing differences in product and clientele, defendants argue that the ultimate objective of GFH is the delivery of food, whereas that of GoWaiter Business is to sell franchises. (Resp. [22] at 20-

13

21.)  Handy further declares that the business purpose of GFH "is the same as any other GoWaiter franchise--to profit from the successful implementation of the RDS business marketing concept it purchased." (*Id.* at Ex. A, ¶ 12.)  At least at the motion to dismiss stage, the Court is unconvinced.  Plaintiffs note that Handy previously swore that GFH's "purpose [is] limited to taking over the management and operations of GoWaiter franchises in a territory until that territory can be sold or transferred to a new owner."  (Mot. to Amend [17] at Ex. 4, ¶ 22 (citing Mot. to Dismiss [15] at Ex. A, ¶ 3).)  Moreover, GFH does not operate GoWaiter franchises continuously, but rather does so only for short, sporadic periods of time until a new franchisee takes over.  Thus, profit and the delivery of food appear to be incidental benefits to GFH, rather than its ultimate business objective.

    For the foregoing reasons, plaintiffs have adequately alleged that GFH and GoWaiter Business form a joint enterprise for coverage under the FLSA, and they are therefore entitled to amend their First Amended Complaint.  Accordingly, plaintiffs' Motion to Amend [17] is **GRANTED** and defendants' Motion to Dismiss [15] is **DENIED**.

## II.  DEFENDANTS' MOTION TO STAY

    Defendants filed their Motion to Stay [16] with the aim of suspending "certain pretrial and discovery deadlines of the Federal Rules of Civil Procedure and applicable Local Rules until the Court

14

has ruled upon [d]efendants' potentially case-dispositive Motion to Dismiss." (Mot. to Stay [16] at 1.) Because the Court now denies defendants' Motion to Dismiss [15], it also **DENIES** defendants' Motion to Stay [16] **AS MOOT**.

### III. PLAINTIFFS' MOTION FOR CERTIFICATION

The FLSA explicitly permits plaintiffs to proceed on behalf of all similarly situated employees. 29 U.S.C. § 216(b). Unlike class actions arising under Federal Rule 23, which presume class member participation and demand that individuals opt-out if they do not wish to be bound by an action's outcome, collective actions under the FLSA require potential class members to opt in to the class if they desire representation. *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 950 n.3 (11th Cir. 2007). Plaintiffs, who brought their claims "on behalf of themselves and others similarly situated", now seek the conditional certification of a class comprised of "[d]rivers who were classified as 'independent contractors' at establishments owned and operated by [d]efendants". (Br. in Support of Mot. for Certification [14] at 2.) They additionally request that the Court (1) order defendants to provide the contact information for all drivers employed by defendants since April 1, 2010, (2) facilitate notice of conditional certification to putative class members, and (3) allow putative class members sixty days from the mailing of the notice to join the action. (Mot. for Certification [14] at ¶¶ 2-5.)

15

Other than requesting that the Court refrain from ruling until it issues an opinion on the pending Motion to Dismiss [15], defendants do not oppose plaintiffs' Motion for Certification. (Mot. to Stay [16] at 2-3.) Defendants have, however, in their motion to dismiss, noted that the relevant class action timeframe asserted by plaintiffs is too broad. (Br. in Support of Mot. to Dismiss [15-1] at 4 n.2.) Accordingly, subject to the following limitations, the Court **GRANTS IN PART** plaintiffs' Motion for Certification [14]. LR 7.1(B), NDGa.

> **A.** **Plaintiffs Have Not Proffered Sufficient Support For Inclusion Of Drivers From GFH's Tallahassee Location, Nor Have They Adequately Supported Their Temporal Claim**

While plaintiffs have adequately shown that they are similarly situated to the class for which they seek conditional certification and that sufficient interest in joining the collective action exists among other GFH drivers, their Motion for Certification requires correction in two respects: geographic scope and time. First, plaintiffs seek certification of a class of drivers employed at GFH-owned GoWaiter franchises from April 1, 2010 to the present. (Br. in Support of Mot. for Certification [14] at 12.) During that time period, GFH owned three GoWaiter locations: Gwinnett County, Georgia; Alpharetta, Georgia; and Tallahassee, Florida. (Mot. to Dismiss [15] at Ex. A, ¶¶ 3-4.) Yet, plaintiffs have offered nothing to support the inclusion of drivers from GFH's Tallahassee location in their

16

collective action.   The Court could not find a single mention of GFH's Tallahassee location in plaintiffs' filings, let alone evidentiary support for that position.[3]

Second, plaintiffs have failed to support their claim for extension of the relevant time period for the conditional class to April 1, 2010.  (Br. in Support of Mot. for Certification [14] at 12.)  Plaintiffs have emphasized that they seek to certify a class of drivers who were employed at _GFH-owned_ _franchises_; they repeatedly emphasize that they do not seek to represent drivers "who were employees of independently owned franchises."  (_Id._)  Yet, although plaintiffs suggest a date of April 1, 2010 as the earliest date of employment for inclusion within the collective action, GFH owned the Gwinnett County GoWaiter location for only six months, from October 1, 2012 through March 11, 2013, and the Alpharetta location for only three months, from January 1, 2013 through March 22, 2013.  (Mot. to Dismiss [15] at Ex. A, ¶¶ 3-4.)  Thus, plaintiffs' request to certify a class of drivers who only worked at GFH-owned franchises, but who were employed as early as April 1, 2010, creates an empty set for this earlier time period.

Plaintiffs' initial burden for conditional certification is low,

---

[3]   To the extent that the Court may have missed a reference to that location or if plaintiffs can offer a sound reason to include Tallahassee, plaintiffs may file a motion for reconsideration.

AO 72A
(Rev.8/82)

but they have failed to meet it with respect to inclusion of drivers from GFH's Tallahassee location and extension of the class's temporal scope to April 1, 2010.[4]  Accordingly, while the Court **GRANTS IN PART** plaintiffs' Motion for Certification [14], the class that it conditionally certifies is limited to drivers employed by defendants at GFH's Gwinnett County location from October 1, 2012 through March 11, 2013 and drivers employed by defendants at GFH's Alpharetta location from January 1, 2013 through March 22, 2013.  Within fourteen days of entry of this Order and Opinion, defendants are **ORDERED** to provide plaintiffs with the names, job titles, mailing addresses, email addresses, phone numbers, dates of employment, and dates of birth for all persons eligible to participate in the collective action.

   B.   **Plaintiffs' Request For Judicially-Facilitated Notice**

   In conjunction with the decision to certify a conditional collective action, the Court authorizes the issuance of notice to the putative class members.  *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 n.40 (11th Cir. 2008).  While defendants do not oppose plaintiffs' proposed notice, the Court has identified several defects contained within it.  (Mot. for Certification [14] at

---

   [4]  Again, can plaintiffs clarify their basis for use of a time period that presently appears not to be apt, they may file a motion for reconsideration.

Proposed Notice.)

 First, the Court sees no need for the undersigned's name to be included in the notice so long as the putative plaintiffs are aware that it has been authorized by the United States District Court for the Northern District of Georgia.  Accordingly, plaintiffs shall modify the first paragraph of their proposed notice to read "**THIS NOTICE AND ITS CONTENT HAVE BEEN AUTHORIZED BY THE U.S. DISTRICT COURT, NORTHERN DISTRICT OF GEORGIA.**"  Second, the proposed notice improperly defines the scope of the conditional class.  Plaintiffs must amend all references to the April 1, 2010 date to reflect the geographic and temporal restrictions of the conditional class, in accordance with the Court's discussion *supra*.  Third, the occurrence of the word "Programmer" within the second paragraph of section one should be changed to "Driver".  Fourth, it is important for putative class members to understand that certain time commitments and activities may be required if they join plaintiffs' lawsuit.  For that reason, plaintiffs must add the following language to the second paragraph of section six: "While this suit is pending, you may be required to participate in it by, among other things, responding to written questions, sitting for depositions, and sitting in court."

 Finally, the Court agrees that an appropriate opt-in period is sixty days from the date upon which notice is mailed, which plaintiffs should reflect in the notice.  Once plaintiffs have

19

complied with these directives and allowed defendants an opportunity to review the revised notice, they are authorized to (1) mail the proposed notice to all potential opt-in plaintiffs and (2) post a laminated copy of the proposed notice, in a size similar to other required notices, in the Gwinnett County and Alpharetta GoWaiter locations.

**IV.   DEFENDANTS' MOTION FOR SANCTIONS**

In response to plaintiffs' "Notice Regarding Joint Preliminary Report" [25], defendants filed their own Notice of Objection to plaintiffs' unilateral submission of a Rule 26(f) Report and defendants also filed a request for sanctions. The Court **DENIES** defendants' request for sanctions [26].

**V.   PROCEEDINGS GOING FORWARD**

The Court has denied defendants' motion to dismiss. This resolution of the current motion does not preclude defendants from renewing this argument in a motion for summary judgment. Indeed, envisioning the possibility that the Court might permit plaintiffs' amendment of their complaint to allege that GoWaiter Franchise ("GFH") and GoWaiter Business were a joint enterprise, defendants requested an additional stay for limited discovery to determine definitively whether the two entities were subject to joint enterprise coverage. (Defs.' Reply [21] at 3 n.1.) Given the delay that the case has already experienced and the absence of any showing

20

AO 72A
(Rev.8/82)

of a likelihood that more discovery would alter a conclusion that the complaint states a claim as to this issue, the Court declines to authorize bifurcated discovery.

Accordingly, the parties shall submit a Joint Preliminary Report pursuant to Local Rule 16.2 by **APRIL 21, 2014.**

<u>CONCLUSION</u>

For the above reasons, plaintiffs' Motion to Amend [17] is **GRANTED**, defendants' Motion to Dismiss [15] is **DENIED**, defendants' Motion to Stay [16] is **DENIED AS MOOT,** plaintiffs' Motion for Certification [14] is **GRANTED IN PART**, and defendants' Request for Sanctions [26] is **DENIED.**

The Clerk of Court is directed to file plaintiffs' proposed Second Amended Complaint as plaintiffs' Second Amended Complaint. The Court **DIRECTS** defendants to provide plaintiffs with the names, job titles, mailing addresses, email addresses, phone numbers, dates of employment, and dates of birth for all persons eligible to participate in the collective action by **APRIL 7, 2014**.

The parties are **ORDERED** to submit a Joint Preliminary Report by **APRIL 21, 2014.**

SO ORDERED, this <u>18th</u> day of <u>MARCH</u>, 2014.


/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

21